## CRUTCHFIELD v. UNITED STATES.
### No. 10200.

Circuit Court of Appeals, Ninth Circuit.
April 2, 1943.

Dissenting Opinion April 9, 1943.

Dissenting Opinion May 22, 1943.

Clarence E. Rust, of Oakland, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., and R. B. McMillan, Asst. U. S. Atty., both of San Francisco, Cal., and Emmet J. Seawell, of Sacramento, Cal., for appellee.

Before WILBUR, DENMAN, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

Appellant was indicted in two counts for violation of § 11 of the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix § 311. After trial before the court, a jury having been waived, he was found guilty on both counts and was sentenced to imprisonment for two years on each, the sentences to run concurrently. At the close of the government's case, and again at the conclusion of all the evidence, appellant moved for dismissal of the indictment on the ground that the evidence was insufficient to sustain a conviction. Both motions were denied, and the denial of

them is the only error assigned on this appeal from the judgment of conviction.

There is no substantial conflict in the evidence. Appellant is a citizen of Canada, domiciled in Siskiyou County, California. He is twenty-five years old and has declared his intention to become a citizen of the United States. Since 1932 he has been an active member of Jehovah's Witnesses, but before September 15, 1941, he did not devote his full time to the work of that group.

Appellant registered with the Selective Service Board at Yreka, California, as required by § 2 of the Selective Service Act, 50 U.S.C.A. Appendix, § 302. In his questionnaire filed February 16, 1941, he stated as his occupation, mechanic and truck driver, as other business or work in which he was then engaged, "preaching the gospel of God's Kingdom as one of Jehovah's Witnesses," and as other occupational experience, mining and saw milling.

In the section of his questionnaire for ministers or students preparing for the ministry, he stated: "I do not customarily serve as a minister. I have been a minister of the [blank unfilled] since 1931. I have been formally ordained. * * * I am not a student preparing for the ministry in a theological or divinity school." Space for particulars regarding the performance of the ordination ceremony was left blank.

He claimed the exemption for conscientious objectors, as follows:

"I claim the exemption provided by the Selective Training and Service Act of 1940 for conscientious objectors because I am conscientiously opposed, by reason of my religious training and belief, to the type or types of service checked below:

"x Combatant military service.

"x Noncombatant military service."

He filed in addition the "Special Form for Conscientious Objector," in which he signed claim B, "I claim the exemption provided * * * for conscientious objectors, because I am conscientiously opposed by reason of my religious training and belief to participation in war in any form and to participation in any service which is under the direction of military authorities." He attached to his questionnaire two letters to the draft board, amplifying his claims to be a minister and a conscientious objector. In one letter he says, in part: "I am a minister of the gospel. (not religion) * * * But I do

serve as the almighty god has commanded to do so in the Bible the following are found in Isa. 61:1, 2; 43:9-12, Math. 10:7; 12 Acts. 20:20; 1 Pet. 2:21; & 1 Cor. 9:16 in these scriptures I would like you to look into. * * * I have been a minister of Gods Kingdom (which isn't a sect or denomination)." Referring to the statement that he had been formally ordained, he says: "Through Isa. 61:1, 2 on [and?] not by any man." [The verses referred to are, "The spirit of the Lord God is upon me; because the Lord hath anointed me to preach good tidings unto the meek; he hath sent me to bind up the brokenhearted, to proclaim liberty to the captives, and the opening of the prison to them that are bound; To proclaim the acceptable year of the Lord and the day of vengeance of our God; to comfort all that mourn."] He says, further, "There appears twice in this article (religious training) which I like to have to (belief and training) for I haven't anything to do with religion." The other letter said in part, "Series I. Part B. Which I have signed my name to there appears the word 'religious' which I would liked to have marked out for I am a christian and have not part in any religious organization on the earth. The bible condemns it in Gal. 1:13."

The local board placed appellant in class IV–E, the class for those conscientiously opposed to service under military control either as combatants or noncombatants. This was in effect a denial of his claim to be a minister.

No appeal was taken from this classification, and appellant has never questioned that it was correct when made. On October 6, 1941, he wrote to the board, saying, "Now when I was classified I realized that it was the only class you could put me in under the circumstances which was class 4-E for which I appreciated very much." The letter then proceeded to call attention to a ruling by General Hershey, Director of Selective Service, made June 12, 1941, (Opinion 14, Vol. III) holding that some members of Jehovah's Witnesses, in view of their standing in the organization and the devotion of their whole time to the work, could properly be regarded as ministers and that those accredited as "pioneers" could be so classified if their names were included in the certified list of such persons furnished by the National Headquarters of the Selective Service System.[1] Appellant claimed in his letter to have become a pioneer, and enclosed his "card of identification." There was introduced in evidence a letter to appellant from the Watchtower Bible and Tract Society, dated September 15, 1941, headed "Pioneer Appointment." Except for the date and appellant's name and address, which are typewritten, the entire letter is a printed form, including the facsimile script signature, "Watchtower B. & T. Society, Inc." The letter informed appellant that "your application for pioneer service has been accepted and this letter constitutes your pioneer appointment." Unless this is the "card of identification" to which appellant referred in his letter of October 6, there is no showing what the nature of that card was, or that the letter of "Pioneer Appointment" was submitted to the board at any time.

---

[1] "2. The unusual character of organization of Jehovah's Witnesses renders comparisons with recognized churches and religious organizations difficult. Certain members of Jehovah's Witnesses, by reason of the time which they devote, the dedication of their lives which they have made, the attitude of other Jehovah's Witnesses towards them, and the record kept of them and their work, places them in a position where they may be recognized as having a standing in relation to the organization and the other members of Jehovah's Witnesses, similar to that occupied by regular or duly ordained ministers of other religions. * * *

"4. The members of Jehovah's Witnesses who devote their time to the work of teaching the tenets of their religion and in the converting of others to their belief, and who enjoy the esteem of other Jehovah's Witnesses, and are each individually recorded as 'pioneers' by the Watch Tower Bible and Tract Society, Inc., at its executive offices in Brooklyn, New York, are in a position where they may be recognized as having a standing, in relation to the organization and to the other members of Jehovah's Witnesses, similar to that occupied by regular or duly ordained ministers in other religions, and such persons who spend all or a substantial part of their time in the work of Jehovah's Witnesses, as set forth above, come within the purview of Section 5(d) of the Selective Training and Service Act of 1940 [50 U.S.C.A. Appendix, § 305(d)] and may be classified in Class IV-D, provided that the names of such persons appear on the certified list of such persons transmitted to State Directors of Selective Service by National Headquarters of the Selective Service System."

Appellant's letter of October 6 requested the board to reopen his classification and put him in class IV-D, as an ordained minister.

The board, by letter dated October 9, 1941, informed appellant that his request to reopen had been denied and added, "If you feel that the case deserves further consideration, you should discuss it with the government appeal agent. If he is convinced that the case should be reopened and files a request accordingly, the case will be reopened." Following this suggestion, appellant consulted the appeal agent and on October 29 they went together to the local board. There was not a board meeting then in session, but appellant testified that a Mr. Fred Taylor (who appears from other testimony to have been a board member) said to the chairman, "Well as far as I am concerned I wouldn't suggest the board give you five minutes time on any of the Jehovah Witnesses, for if you knew who were supporting them in the Middle West, in Illinois and Iowa, you wouldn't have anything to do with them either," and that in response to a question from appellant, Mr. Taylor said further that "they were affiliated with the Nazis and Fascists of the country."

This testimony by the appellant is cited in support of his claim that the board was biased. It is not shown that the board acted on Taylor's statement, and the trial court may have disbelieved appellant's testimony regarding it. The testimony of the clerk of the board, describing the same occasion, does not include any such remarks. This was, moreover, long after appellant's original classification in which his claims were admittedly given full and fair consideration.

On November 6, 1941, the appeal agent notified appellant that he had examined the matter of appellant's classification and that he believed that the appellant was classified correctly and returned to appellant "certain documents" left with him. Appellant also received a postcard dated November 4, 1941 and signed by the appeal agent as a member of the local board, informing him that his classification had been affirmed by the Board of Appeal by a vote of 1 to 0. There is no other evidence that an appeal was taken and it can at least be inferred from the record that there had in fact been no appeal. Appellant argues that by these circumstances he, being ignorant of the proper procedure, was in effect misled into believing that an appeal had been taken so that he was deprived of his right to take an appeal. Whatever merit this contention might otherwise have is destroyed by the fact that the regulations, while providing for appeals from both original classifications and reclassifications, do not provide for any appeal from a refusal to reopen a classification. Appellant was not, therefore, by the circumstances complained of, deprived of any remedy to which he was entitled.

The board, by written order of November 22, 1941, directed appellant to report on December 4, 1941, for assignment to a Civilian Public Service Camp located at Cascade Locks, Hood River County, Oregon. Appellant appeared before the board at the appointed time but stated that he would not go to the camp to which he was assigned, giving as his reason that, "I was a minister." On December 10, 1941 he was given "Notice of Suspected Delinquency," directing him to report to the board by letter on or before December 15. On December 14 he received from the Watchtower Society a verified certificate, dated December 8, 1941, stating that he had become an ordained minister of that society on September 15, 1941. On December 15 he reported to the board in person, presenting this certificate and a written statement expounding his views. He again refused, on the ground that he was a minister, to go to the designated work camp.

On March 18, 1942, appellant was indicted in two counts for these two refusals to report to work camp. A jury having been waived, he was tried by the court and found guilty on both counts. Appellant's position, in the lower court and here, is that the undisputed evidence shows conclusively that he is a minister, exempt from the provisions of the Selective Service Act (except as to registration), that the local board acted arbitrarily and capriciously in refusing so to classify him, and that he has in consequence been deprived of due process of law.

■ At the outset we are met with the question of whether or not such a claim may be submitted to the courts as a defense to a prosecution for disobedience of orders of the draft board. There is no statutory provision for review by the courts of the board's action, either by appeal or application to review, as in the case of some administrative bodies. It follows that the power of review by the courts, if

it exists at all, is limited to a consideration of whether the board deprived appellant of his constitutional right to due process, that is, a fair hearing after notice. Two of our Circuit Courts of Appeals have held that the question of due process in making the order of induction or assignment cannot be raised in defense to a charge of violating the order, and that such a claim may only be raised by petition for release from custody upon writ of habeas corpus. That is to say, the claimant of the exemption can only raise the question after he has complied with the order by surrendering to the custody of the designated custodian and then invoking the power of the court to release him from unlawful restraint. United States v. Grieme, 3 Cir., 128 F.2d 811; United States v. Bowles, 3 Cir., 131 F.2d 818, decided Nov. 10, 1942; Fletcher v. United States, 5 Cir., 129 F.2d 262; Mangum v. United States, 5 Cir., 131 F.2d 435, decided Nov. 30, 1942; Haberman v. United States, 131 F.2d 1018, 5 Cir., decided Dec. 11, 1942. The Eighth Circuit Court of Appeals, on March 10, 1942, held in Johnson v. United States, 126 F.2d 242, 247, that the question of due process could not be raised as a defense to a criminal charge of disobedience if the defendant had not availed himself of his right to appeal from the classification decision or from a reclassification. In that regard the court said, "Courts can prevent arbitrary action of such agencies from being effective. But a registrant cannot come to a court for such relief until he has exhausted all available and sufficient administrative remedies for such arbitrary action. Appellant has not availed himself of such corrective administrative relief. He has no standing in a court to complain and the court cannot examine the arbitrariness of his classification by the local board." The Sixth Circuit Court of Appeals, on June 29, 1942 in Rase v. United States, 129 F.2d 204, without discussing the power of the trial court to consider the defense of denial of due process in the board's classification, assumed the existence of such power, but held that there was no lack of due process and affirmed a judgment of conviction.

In the case at bar it is unnecessary to determine the power of the court in a situation where due process has not been accorded by the draft board. At the trial it was shown by the prosecution that appellant's name was not on the official certified list of pioneers referred to in General Hershey's ruling set out in note 1, ante. This in itself would suffice to justify the action of the local board. Appellant has not shown that he is entitled to the exemption provided for ministers, or that the local board denied him due process, either in his original classification or in denying his request for reconsideration. The evidence in this regard sustains the judgment.

At the time this case was argued, the court had under consideration an appeal from sentence in a similar case, Hopper v. United States, 9 Cir., 142 F.2d 167, No. 10,110, in which it was claimed that the indictment failed to state an offense. In view of that fact the court, at the hearing in the instant case, directed appellant's attention to certain deficiencies in the indictment against him and briefs were filed on that question after the argument. The indictment was in the following terms: "In the October, 1941 term of said Division of said District Court, the Grand Jurors thereof on their oaths present: That Harvey Ward Crutchfield the defendant here, being a male citizen of the United States of the age of twenty-five years and under the duty to present himself for, and submit to registration under the provisions of the Act of Congress approved September 16, 1940, known as the 'Selective Training and Service Act of 1940' and thereafter to comply with the rules and regulations of said Act, did, on or about the 4th day of December, 1941, at the City of Yreka, County of Siskiyou, in the Northern Division of the Northern District of California, and within the jurisdiction of this court, wilfully, knowingly and feloniously fail and neglect to perform such duty, in that he, the said defendant, did then and there refuse and fail to report for induction, and refused and failed to go to a Civilian Works Camp of National Importance, as directed, (50 U.S.C.A. Appendix, § 311)".

The second count was identical, save that it designated December 15, 1941, as the date of the offense.

The suggestion is that this indictment failed to state an offense because it did not state that appellant had been so classified as to be subject to assignment to a civilian works camp, or that he was ordered to report to such a camp by any person authorized to make the order, or that the camp designated had been actually established. In the briefs on this question, the

government relies largely upon the rule that a verdict cures all formal defects in an indictment and that 28 U.S.C.A. § 391 and 18 U.S.C.A. § 556, prohibit reversal for formal defects, whereas appellant asserts that failure to state an offense is necessarily fatal to the validity of the entire proceedings. Since this case was argued, the Hopper case has been decided (December 18, 1942), and similar defects in that indictment were held to be fatal. If that decision is correct, this indictment is likewise fatally defective and the verdict or, in this case, the judgment of the court, did not cure the error.

In the Hopper case, however, timely objection was made in the trial court to the sufficiency of the indictment, which was not done in the case at bar. There is another rule to be considered with regard to defects in pleading or evidence which are not brought to the attention of the trial court. This court is an appellate court with the function of considering and rectifying errors of the trial court. Defects in pleadings or evidence which were not presented to the trial court, and on which it has consequently not ruled, present no error to be assigned as such on appeal. Miller v. United States, 57 App.D. C. 228, 19 F.2d 702, 704; Hutchinson v. Fidelity Inv. Ass'n, 4 Cir., 106 F.2d 431, 436, 133 A.L.R. 1061. However, this court has, by rule 2(d) of its rules for criminal appeals, reserved to itself power to consider plain error not assigned. A similar rule of the Seventh Circuit Court of Appeals, Cub Fork Coal Co. v. Fairmount Glass Works, 59 F.2d 539, was approved by the Supreme Court in Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 480, 53 S.Ct. 252, 77 L.Ed. 439. Even under such a rule the error is usually pointed out by the aggrieved party, and the power of the court to consider it is invoked. This power of the court is always discretionary, and a fortiori is that true when the question is raised for the first time by the court sua sponte. This discretionary power has been occasionally exercised by the Supreme Court, but its limits appear not to have been very clearly defined. Certainly its exercise should be in the furtherance of sound public policy.

The Supreme Court, in United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555, stated the applicable rule as follows: "In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings. See New York Central R. Co. v. Johnson, 279 U.S. 310, 318, 49 S.Ct. 300, 73 L.Ed. 706; Brasfield v. United States, 272 U.S. 448, 450, 47 S.Ct. 135, 71 L.Ed. 345."

In Kinard v. United States, 69 App.D.C. 322, 101 F.2d 246, 247, Justice Miller, speaking for the Court of Appeals for the District of Columbia, after quoting from United States v. Atkinson, supra, stated: "The purpose of such an exercise of discretion is to insure justice, not to thwart it."

In Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037, the Supreme Court, speaking through Justice Black, said:

"Ordinarily an appellate court does not give consideration to issues not raised below. For our procedural scheme contemplates that parties shall come to issue in the trial forum vested with authority to determine questions of fact. This is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide; it is equally essential in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence. And the basic reasons which support this general principle applicable to trial courts make it equally desirable that parties should have an opportunity to offer evidence on the general issues involved in the less formal proceedings before administrative agencies entrusted with the responsibility of fact finding. * * *

"Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice. An examination of the cases relied upon by petitioner discloses that this Court, in following in some cases the general principle sought to be invoked here by petitioner, has been

careful to point out the circumstances justifying application of the practice in the particular case."

The opinion then proceeds to consider a number of cases in which the courts have noted plain errors unassigned and cases in which they have refused to do so.

Recently the Supreme Court, in United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368, declined to consider a constitutional question raised for the first time in the government's brief on appeal. Cf. Kane v. United States, 8 Cir., 120 F.2d 990, 992.

■ If the error is of such a nature that the sentence could be successfully attacked collaterally, as in habeas corpus proceedings, then the error is plain and should be noticed by this court, because if it proceeded to affirm judgment and sentence notwithstanding such error its action would be equally void and subject to collateral attack. If the judgment and sentence will not be subject to such collateral attack, and if the indictment has in fact put the defendant on notice of the offense with which he was charged and will suffice to protect him from being again put in jeopardy for the same offense, then we should decline to notice, on our own motion, error not assigned. To do so would serve no useful purpose.

■ The sufficiency of the facts alleged in an indictment is a question for the trial court to determine. In Knewel v. Egan, 268 U.S. 442, 446, 45 S.Ct. 522, 524, 69 L.Ed. 1036, the court said: "It is fundamental that a court upon which is conferred jurisdiction to try an offense has jurisdiction to determine whether or not that offense is charged or proved. Otherwise every judgment of conviction would be subject to collateral attack and review on habeas corpus on the ground that no offense was charged or proved. It has been uniformly held by this court that the sufficiency of an indictment cannot be reviewed in habeas corpus proceedings," citing nine cases. Cf. Goldsmith v. Sanford, 5 Cir., 132 F.2d 126, decided December 11, 1942, and Welch v. Hudspeth, 10 Cir., 132 F.2d 434, decided December 22, 1942. It follows that the sufficiency of the indict-

ment could not be attacked in any collateral proceedings.

■ As pointed out above, the defects in the indictment are the failure to allege that the appellant was classified in class IV–E (conscientious objectors assignable to civilian work camps) or at all, and the failure to allege that the board had ordered appellant to report to such a camp duly established for that purpose. The record shows, however, that these things were in fact done, and were known to appellant to have been done. Their omission from the indictment in no way prejudiced his defense. The indictment indicated the nature and date of the offenses charged; this was sufficient to enable appellant to prepare his defense, and is sufficient to prevent another conviction for violation of the same orders. The indictment might well have been vulnerable to attack in the trial court, but in the absence of such attack and assignment of error we find no occasion for now exercising our discretion to notice its defects.

It is clear that appellant will refuse to obey any order of the board or of any human authority to go anywhere or do anything that would interfere with his avowed intention to give his whole time to the preaching of the doctrines of his sect. While this is manifest in various ways in the testimony, we quote some of the evidence in the margin.[2] So far as the appellant is concerned he has deliberately challenged the right of the government to interfere with his liberty. He invokes the directions of Divine authority as supreme and expresses a willingness to suffer bonds and even death. His offense against the law is a continuous one deliberately so intended and expressed not only to the board and its members but also to the trial court and at no time disavowed before this court. His claim is that the law has exempted him from service in that he is a minister. That claim has not been sustained by the board charged with the duty of administering the law.

The evidence shows that appellant is guilty of the crime of disobedience denounced by the statute, and he has failed to sustain the burden of proving his af-

---

[2] "The camp to which I was directed to report by the local Draft Board is operated by a religious group or church organization, and my beliefs are opposed to any such organization and I could not conscientiously live at a camp under the auspices of a religious group. However, my main objection to reporting to the camp was that it would interfere with my work as a witness.".

firmative defense of denial of due process. There is no reason to believe that a trial on an amended indictment would result in appellant's favor. Under these circumstances, and where, as here, the indictment is sufficient to advise appellant of the offense intended and enable him to prepare his defense, is sufficient to prevent his being again convicted of the same offense, and is not subject to collateral attack, this court will not exercise its discretionary power to consider on its own motion the sufficiency of the indictment.

Judgment affirmed.

HEALY, Circuit Judge (concurring).

I am in accord with the views expressed in the main opinion. The question whether appellant is a "regular or duly ordained minister of religion" and thus entitled to exemption from service is one of fact. Upon the record before us the question would appear to have been honestly resolved against appellant. It does not appear that the Board acted arbitrarily in placing him in Class IV-E, nor that its subsequent refusal to reclassify him in Class IV-D was arbitrary or capricious.

In respect of the indictment it was obviously sufficient to advise appellant of the charge against him, and I think there can be no serious question that it is so couched as to enable appellant to plead it in bar of a second prosecution for the same offense. Whether it was demurrable for uncertainty in the first instance is another question, and one which is not before us. My views on the subject of criminal pleading are so totally at variance with the holding in Hopper v. United States, recently decided, that I prefer not to regard that case as authority by which the full court will ultimately feel itself bound.

DENMAN, Circuit Judge (dissenting).

I dissent for reasons which will be stated in an opinion to be later filed. Among them is the doubt cast upon the decision in Hopper v. United States, 9 Cir., 142 F.2d 167, No. 10,110, a case now pending in this court on petition for rehearing, having the effect stated in the motion attached hereto and hereby made a part hereof.

My opinion will await the decision of the court on this and a similar motion filed in Hopper v. United States.

Upon Motion of WILLIAM DENMAN, United States Circuit Judge for the Ninth Circuit.

To the Honorable CURTIS D. WILBUR, FRANCIS A. GARRECHT, CLIFTON MATHEWS, BERT EMORY HANEY, ALBERT LEE STEPHENS and WILLIAM HEALY, Judges of the United States Circuit Court of Appeals, for the Ninth Circuit:

Now comes WILLIAM DENMAN, United States Circuit Judge for the Ninth Circuit, and moves the court that it sit en banc for the consideration of the following questions involved in this case and in the case of Hopper v. United States, 9 Cir., 142 F.2d 167, No. 10,110, now pending on petition for rehearing in this court:

(1) Whether the indictment in Hopper v. United States fails to state a crime punishable under section 11 of the Selective Service and Training Act of 1940, 54 Stat. 894, 50 U.S.C.A. Appendix, § 311.

(2) Whether the opinion in Crutchfield v. United States properly creates a doubt in the correctness of the decision in Hopper v. United States.

Among other grounds for the motion is the importance of these two cases with reference to the certainty in the minds of the grand juries, and the United States Attorneys of the circuit, as to the form of indictments in the many conscientious objectors' cases arising in the circuit.

Dated, April 2nd, 1943.

WILLIAM DENMAN,
United States Circuit Judge.

DENMAN, Circuit Judge (expanding his dissent).

On April 2, 1943, my dissent was noted to be expanded in an opinion to follow the decision of my motion for a hearing en banc in this case and in Hopper v. United States, No. 10,110, also pending here on rehearing.

This case (Crutchfield v. United States) was decided by the court in separate opinions by Judges WILBUR and HEALY. Judge HEALY indicated his view that the Hopper case was a wrong decision and should be decided otherwise by the court en banc, stating, "My views of the subject of criminal pleading are so totally at variance with the holding in Hopper v. United States, recently decided, that I prefer not

to regard that case as authority by which the full court will ultimately feel itself bound."

Judge WILBUR added his doubt of the correctness of the Hopper decision, stating: "Since this case was argued, the Hopper case has been decided (December 18, 1942, 142 F.2d 167), and similar defects in that indictment were held to be fatal. *If that decision is correct,* this indictment is likewise fatally defective and the verdict or, in this case, the judgment of the court, did not cure the error." (Emphasis supplied.)

Judge WILBUR'S opinion then emphasizes his belief of the decision's doubtful character by showing the existence in the Crutchfield record of the proof at trial of every fact necessary to cure a defective but not void indictment and proceeding to consider the appeal and its merits.[1]

All three judges (Judges MATHEWS and STEPHENS and myself) concur in the Hopper decision. With the confusion in the circuit caused by the divergent views of three judges against two, in the two cases still pending before the court, the necessity arises for a hearing en banc under the principle stated in Textile Mills Corp. v. Commissioner, 314 U.S. 326, 62 S.Ct. 272, 86 L.Ed. 249. The Supreme Court, in holding the circuit courts of appeals may hold en banc sessions, states

(pages 334, 335 of 314 U.S.; page 277 of 62 S.Ct.): " * * * Certainly the result reached makes for more effective judicial administration. Conflicts within a circuit will be avoided. Finality of decision in the circuit courts of appeal will be promoted. Those considerations are especially important in view of the fact that in our federal judicial system these courts are the courts of last resort in the run of ordinary cases * * *."

Furthermore, in that case the Supreme Court declares the individual judicial right of each of the seven judges of this court to participate in the hearing and decision of any case before it.[2] Thus is clearly indicated the right of participancy of Judges GARRECHT and HANEY in the question whether the full court will, at least, *entertain* a motion aimed to resolve such confusion.[3]

Since I presided in the Hopper hearing and am the one judge who heard both these pending cases, and agree with Judge HEALY that the conflict should be resolved by the "full court," I filed in each case the following identical motion, addressed to Senior Circuit Judge WILBUR and the other judges:

"Now comes WILLIAM DENMAN, United States Circuit Judge for the Ninth Circuit, and moves the court that it sit en banc for the consideration of the follow-

---

[1] Judge Wilbur's opinion states that "As pointed out above, the defects in the indictment are the failure to allege that the appellant was classified in class IV-E (conscientious objectors assignable to civilian work camps) or at all, and the failure to allege that the board had ordered appellant to report to such a camp duly established for that purpose. The record shows, however, that these things were in fact done, and were known to appellant to have been done. Their omission from the indictment in no way prejudiced his defense. The indictment indicated the nature and date of the offenses charged; this was sufficient to enable appellant to prepare his defense, and is sufficient to prevent another conviction for violation of the same orders. * * *"

[2] "We cannot conclude, however, that the word 'court' as used in those other provisions of the Judicial Code means only three judges. That would not only produce a most awkward situation; it would on all matters disenfranchise some circuit judges against the clear intendment of § 118 [28 U.S.C.A. § 213]. Nor can we conclude that the word 'court' means only

three judges when the court is sitting, but all the judges when other functions are performed. Certainly there is no specific authority for that construction. And it is difficult to reach that conclusion by inference. For to do so would be to imply that Congress prohibited some circuit judges from participation in the most important function of the 'court' (the hearing and the decision of appeals), though allowing all of them to perform the other functions [making rules, appointing clerks, etc.]. Such a prohibition as respects the ordinary responsibilities of a judicial office should be inferred only under compelling necessity, since a court usually will consist of all the judges appointed to it. That necessity is not present here. * * *" Textile Mills Corp. v. Commissioner, 314 U.S. 326, 333, 62 S.Ct. 272, 277, 86 L.Ed. 249.

[3] In three of the four cases heard by this court en banc, the court acted sua sponte. On the request of one or more of the judges, a full court was convened in chambers by the Senior Circuit Judge. There motions were made and carried by a vote of the judges.

ing questions involved in this case and in the case of Hopper v. United States, No. 10,110, now pending on petition for rehearing in this court:

"(1) Whether the indictment in Hopper v. United States fails to state a crime punishable under section 11 of the Selective Service and Training Act of 1940. 54 Stat. 894, 50 U.S.C.A. Appendix, § 311.

"(2) Whether the opinion in Crutchfield v. United States properly creates a doubt in the correctness of the decision in Hopper v. United States."

Prior and subsequent to filing these motions, copies were given Judge WILBUR and I asked him to convene the full court in chambers to enable me to present the motion for, at least, the court's consideration. His answer on both occasions was emphatically that he would not.

This dissent is, in part, from Senior Circuit Judge WILBUR'S refusal so to convene the full court. In so frustrating a consideration of the motions, the senior circuit judge, in my opinion, is unreasonably denying due judicial process affecting the following:

(1) Judge HEALY, who, as a member of this court, properly desired for the litigants and the bar of the circuit in scores of conscientious objectors' cases now pending, the "full court" to consider his claim in the Crutchfield case that the Hopper decision is not one by which the court "will ultimately feel itself bound;" as well as myself, the moving judge, and my two associates in the Hopper case, whose decision in favor of Hopper is called in question;

(2) The United States, the unsuccessful litigant in the Hopper case, now contending on petition for rehearing that Hopper is a criminal, who, under our decision, is permitted to be at large when he should be in the penitentiary serving a two year sentence;

(3) The grand juries and the United States attorneys drawing indictments in the many Selective Service violations;

(4) The bar and litigating public generally who find so obstructed the due and orderly process for the removal of such confusion and smearing of the circuit's judicial pronouncements.

Since I believe one or the other of the affected litigants will find more effective than that of a judge of this court a demand that at least a motion be entertained and heard to remedy such a condition, I shall withhold my discussion of what seem other confusions in the court's opinion in the hope that consideration en banc will make the discussion unnecessary.

DENMAN, Circuit Judge (enlarging his dissent of April 9, 1943).

The appellant seeks a rehearing en banc by his petition to the seven circuit judges composing the entire court. It is in form like my own. He filed no petition for rehearing addressed to the three-judge panel. The court en banc has not acted upon it for reasons which later appear.

The Supreme Court has held that in the absence of a decision by a three-judge panel of this court, but while the case is still before it, a litigant has the right to seek a rehearing en banc and we have the right to grant it. United States ex rel. Robinson v. Johnston, Warden, 316 U.S. 649, 62 S.Ct. 1301, 86 L.Ed. 1732. That decision is based upon the law as established in Textile Mills Securities Corp. v. Commissioner, 314 U.S. 326, 62 S.Ct. 272, 86 L.Ed. 249. So far as concerns the service to litigants and the bar, there often is more reason to exercise the power of the court to have a plenary rehearing after a decision of a panel of three judges—say, when the decision questions or overrules a prior decision.

The Textile Mills case holds that the provisions of 28 U.S.C.A. § 212, Jud.Code § 117, for a court of three judges, of which two shall constitute a quorum, is merely the "permissible complement" of judges for consideration of our litigation. It also holds that any other judge has the right to participate in the consideration of such litigation.

With respect to the minimum size of our panel of judges, the law for us is the same as for the Supreme Court which has a minimum panel of six justices. 28 U.S.C.A. § 321. A majority of four may render a decision, the litigant may petition for a rehearing under Supreme Court Rule 33, 28 U.S.C.A. following section 354, and a concurring and dissentient judge and three others not participating in the hearing may order a rehearing. Indeed, in many cases where there is a four to four division of the justices and a vacancy, the justice appointed to fill the vacancy votes with one of the group of four to grant a rehearing. The rule is a self-imposed limitation on the full power of the Supreme Court to grant a re-

hearing without the acquiescence of any one of the majority justices in the prior decision.

Article VI, sec. 2, of the California constitution specifically provides for a panel of three of the seven justices of its supreme court, and that any four justices may grant a rehearing en banc after a decision by the panel of three. So also in the State of Washington. State ex rel. Vanderveer v. Gormley, 53 Wash. 543, 554, 102 P. 435, 104 P. 620.

It is my opinion that we have as full power in the conduct of our business as an appellate tribunal as has the Supreme Court of the United States, and that, since Congress has placed no limit on our power while sitting en banc, we have the jurisdiction to entertain a motion to hear a case en banc which is still pending in the court, though a decision has been rendered therein by two judges of a panel of three. Whether we, by rule, may deprive a litigant of the right so to petition for a hearing en banc, or qualify his right as has the Supreme Court, is beside the question. We have no such rule.

The senior circuit judge still refuses to convene the court en banc *even to consider* the question of the jurisdiction of the court en banc to take over a case pending before three judges, in which judgment has been rendered by two judges of a three-judge panel, either on the petition of the litigant or myself, a dissenting judge of the three-judge panel.

The particular three judges obtained their power to consider the case solely by virtue of our Rule 4 [1] made by the whole court. As I understand it, the ground of the senior circuit judge's refusal is that once the three judges so assigned by the whole court to consider the case have rendered judgment, though the judgment is not the final action of the court and the case is still before the court during the period for rehearing, only the setting aside of the judgment by two or more of the three judges participating in the decision permits a petition for a rehearing en banc. That is to say, that the seven judges have resigned to two judges selected by the seven the jurisdiction to prevent a rehearing by the seven of a decision of the two not yet final.

I consider it unreasonable and arbitrary for the senior circuit judge to prevent even the consideration by the court en banc of the correctness of his position. It seems obvious that what the court as a whole has given the three judges, it can take from them so long as the case is pending in our court. To hold the contrary is to deny to the court the power recognized in the Textile Mills case.

This dissent is not concerned merely with the senior circuit judge's refusal to act. An extraordinary condition exists in the circuit with regard to a very large number of persons claiming illegal imprisonment for acts based upon their religious convictions. As I understand the majority opinion, it is that the indictment of Crutchfield which, even less than that of Hopper (Hopper v. United States, 9 Cir., 142 F.2d 167, decided December 18, 1942) shows him subject to no order of the Selective Service Board he is required to obey, and that, if the Hopper decision be correct, such a defect cannot be cured by verdict or judgment of the court.

*There are in this circuit over 100 persons convicted and sentenced on indictments no more describing an order of the Board disobeyed by the convicted man than in the Crutchfield and Hopper cases.*

What this confusion of decision means to the attorneys for these imprisoned men, either on appeal or in seeking Executive clemency, is obvious. Yet, the senior circuit judge refuses to convene the court even to consider its power to remedy such a startling condition in cases involving the religious freedom protected by the First Amendment to the Constitution and implemented in the Selective Training and Service Act, 50 U.S.C.A. Appendix, § 301 et seq., and its regulations.

Coming to the facts in this case, it is apparent that Crutchfield's conviction and two year sentence, if final, is a miscarriage of justice. If prior to the order to report he in fact was a "Pioneer" clergyman, no order justly could be made by the Selective Service Board which could affect him. He

1 "Rule 4

"Assigning of Causes for Hearing

"1. The calendars of the court shall be made up by the Clerk under the direction of the senior Circuit Judge subject to the approval of the majority of the judges.

"2. The senior Circuit Judge after conference with the Circuit Judges shall designate and assign the judges who are to hear the causes placed upon the calendars of the court; such designation or assignment may be modified or set aside by a majority of the judges."

had been classified as 4–E, a conscientious objector, subject to the Board's order to go to a Civilian Works Camp for work of national importance. He secured the certificate of the proper authority of the religious order of Jehovah's Witnesses certifying his appointment as a Pioneer minister, entitling him to be classified in class 4–D, as a minister of the gospel of his religious body, and presented it to the Board.

Despite Regulation 626.1 that no classification is permanent, the Board refused to reopen the question of Crutchfield's reclassification, apparently not being satisfied with the form of the certificate, and later ordered him to go to such a camp. He reported to his Board, produced a proper certificate of his religious body showing that he had been a Pioneer since September 15, 1940, and insisted that, despite his classification, he should be free to preach. The letter of January 13, 1942, from General Hershey, Director of the Selective Service System, shows a refusal by Hershey to certify to the Board that which the certificate from the religious body of Jehovah's Witnesses showed Crutchfield to be, namely, a minister—not because he had not such status, but because he had declined to go to the camp.

Nevertheless, though this clergyman conscientious objector clearly appears to have acted conscientiously throughout, he received a two year sentence. One wonders whether there would have been such a sentence if Crutchfield had been a Catholic priest, who, not allowed counsel before the Board, had found himself in such a dilemma and had refused to desert his parish and be confined within the camp. Assuming the judgment is valid, here seems a clear case for Executive clemency.

Moreover, if ever there was an unassigned error which required the consideration of an appellate court, this case presents one. It is erroneous to say that we refused to entertain it. On the contrary, we ordered both parties to file briefs discussing it and considered them when they were filed. In effect, what is done is to order it considered and then revoke the order.

This extension of my dissent has been delayed in the hope there would be a consideration of appellant's petition to the whole court for a rehearing en banc. It should be *considered,* at least, in any case involving such confusion of the court's decision. A fortiori should it be considered

where the petitioner is imprisoned because of conscientious insistence of his rights, as a minister of religion, to preach and spread his faith.