UNITED STATES of America,
Plaintiff-Appellee,

v.

Timothy Jonathan BOROSKI, Defendant-Appellant.

No. 18548.

United States Court of Appeals
Sixth Circuit.

June 25, 1969.

Kenneth S. Jacobs, Villa Park, Ill., for appellant, Kenneth S. Jacobs, Villa Park, Ill., Martin W. Quallich, Cleveland, Ohio, on brief.

Robert E. Hamel, Bay City, Mich., for appellee, Lawrence Gubow, U. S. Atty., Robert E. Hamel, Asst. U. S. Atty., Bay City, Mich., on brief.

Before O'SULLIVAN, PECK and COMBS, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Timothy Jonathan Boroski appeals from his conviction in the United States District Court for the Eastern District of Michigan, Northern Division, of violation of the Universal Military Training and Service Act, 50 U.S.C. App. § 462 et seq. He was given a five year sentence under Title 18 U.S.C. § 4208(a)(2), with the proviso that he would become eligible for parole at such time as the Board of Parole should determine.

We affirm.

Boroski was one of five assistant presiding ministers of the Clio, Michigan, Congregation of Jehovah's Witnesses. In answering a question propounded in his classification questionnaire—filed with his Local Selective Service Board at Flint, Michigan, on October 23, 1964 —he described his duties as a minister in the following manner:

"Conducting Bible Studies at private homes; preach from door to door; Call Back on ones who showed interest; Take care of ordering and distributing of magazines at local congregation to fellow ministers & assign territories for field activity; Give Public Bible sermons, & conduct Cong. Bible Study."

He asserted exemption from the service as a minister [1] (4-D classification), and also claimed a conscientious objector classification (1-O).

Boroski's Local Board, on November 18, 1964, classified him 1-O. On December 16, 1964, he was granted a personal appearance before the Local Board, pursuant to his request that he be classified 4-D. His classification was reopened and he was reclassified 1-O. On December 24 he requested that his case be reviewed by the State Appeal Board. Upon such review the State Board, on February 23, 1965, classified Boroski 1-O. During the year 1965, he submitted various items of information to his Local Board. He claimed that he devoted 26 hours per week to a miscellany of duties in connection with his alleged ministerial activities. These he performed without pay, but he was also employed at least 40 hours per week as an oven worker in an automobile plant. On November 23, 1965, a meeting of the Local Board was held with all members

[1]. Under 50 U.S.C.App. § 456(g), "Regular or duly ordained ministers of religion * * * shall be exempt from training and service." Ministers are defined by 50 U.S.C.App. § 466(g) as follows:

"(1) The term 'duly ordained minister of religion' means a person who has been ordained, in accordance with the ceremonial ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization.

"(2) The term 'regular minister of religion' means one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister.

"(3) The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial rite, or discipline of a church, religious sect or organization, but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization."

present, as was Boroski. The summary of the meeting recites that:

"Mr. Albert C. Holman was present representing the State Director of Michigan.

"The Local Board remained in session until 5:40 P.M. during which time the registrant [Boroski] made an appearance. . The registrant's Selective Service file was reviewed and a discussion was held to try and reach an agreement as to the type of civilian work which the registrant should be required to perform in lieu of induction into the Armed Forces. The registrant refused to perform any of the work available for Conscientious Objectors.

"It was unanimously agreed by the board members present and the State Director's representative that the registrant be assigned to work of national importance as a hospital worker and that it would be appropriate for him to perform this work at the Harper Hospital, Detroit, Michigan."

On January 19, 1966, he was ordered to report for civilian work at Harper Hospital on January 31, 1966. He refused such employment, and was thereafter indicted. The case was tried to the District Judge upon Boroski's waiver of a jury trial. He was found guilty on September 28, 1967. On February 5, 1968, he was sentenced to the custody of the Attorney General for a period of five years.

To make out its case, the government introduced the Local Board's file relating to Boroski. It was identified and authenticated by testimony of the Clerk of the Local Board. An employee of Harper Hospital testified as to Boroski's refusal to accept the ordered civilian employment. Appellant offered no evidence and made no objection to the government's evidence. By his own choice he acted as his own counsel. However, he has been represented by retained counsel on his appeal to this Court.

Appellant argues six grounds for reversal: First, that there was no basis in fact for his 1-O classification and the denial of a ministerial exemption. Second, that the board erroneously failed to reopen his classification upon proper request. Third, that the government did not prove that, had he not been classified 1-O, he would have been ordered to report for induction at the same time he was ordered to report for civilian work. Fourth, that hearsay evidence was admitted at his trial. Fifth, that the order to report for civilian work was a violation of the 13th Amendment to the United States Constitution. Sixth, that the government failed to prove that the civilian work order was issued or authorized at a meeting of his Local Board held subsequent to, or conditioned upon, approval by the National Selective Service Director.

1) Basis in fact for 1-O classification.

■ Appellant Boroski was ordained as a minister of Jehovah's Witnesses at the age of sixteen. We have quoted above what he told his Local Board in answering his first questionnaire. In his brief to this Court he added that:

"He had been duly appointed by the Watchtower Bible and Tract Society as the Magazine Territory Servant and a Book Study Servant of the Clio Congregation of Jehovah's Witnesses."

The Watchtower Bible and Tract Society certified that Boroski performed ministerial duties as "are required of him as an assistant presiding minister." His counsel advises that Boroski was one of five assistant ministers in his congregation, which comprised between 75 and 150 persons. He was subordinate to both the Congregation Servant (the Presiding Minister) and the Assistant Congregation Servant. In a paper which he called "Supplementary Statement of Registrant," Boroski described at length a miscellany of activities which he performed as a member of Jehovah's Witnesses. Among his duties was that of a Congregation Book Study Conductor. Of this he said:

"The responsibility of this person is to take care of a small group. Yes,

the congregation is divided up into several groups, the number of which depends upon the congregation. They are kept down around 10–12 (ten to twelve) in a study group. So it is my job to help various ones in this Study Group in all the activities of the Organization."

He further described his activities:

"One other aspect about the service which I perform, which is far different from that of the Orthodox Clergy, is the fact that I do not require the congregation to come to me and listen to me preach in a Church building, but rather go directly to the homes of the people."

Other activities are described but, neither singly nor in combination, are they of sufficient cogency to support and meet Boroski's burden of establishing his entitlement to the ministerial exemption as defined in 50 U.S.C. App. § 466(g). Neither can we fault his Local Board's failure to find therein grounds for declaring Boroski to be a minister within the meaning of applicable law.

In denying Boroski's motion for acquittal, the District Judge said:

"Viewing what was before the board in this case we find clearly present a factual basis to support its decision that defendant was not a minister within the meaning of the Universal Military Training and Service Act; and we add that the record does not disclose that defendant's classification resulted from arbitrary or capricious action on the part of those administering the Selective Service System."

In Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 427, 90 L.Ed. 567, 573 (1946), the Supreme Court expressed the limited reviewability of draft board conclusions:

"The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant."

In Dickinson v. United States, 346 U.S. 389, 395, 74 S.Ct. 152, 156, 98 L.Ed. 132, 137 (1953), the Court said that "each registrant must satisfy the Act's rigid criteria for the exemption" and then added:

"and since the ministerial exemption is a matter of legislative grace, the selective service registrant bears the burden of clearly establishing the right to the exemption."

The Supreme Court also quoted from a Senate Report that this ministerial exemption "is a narrow one, intended for the leaders of the various religious faiths and not for the members generally." 346 U.S. at 394, 74 S.Ct., at 156.

We are satisifed that the District Judge's finding was consistent with our decisions in United States v. Willard, 312 F.2d 605 (6th Cir. 1963), cert. denied, 372 U.S. 960, 83 S.Ct. 1014, 10 L.Ed. 2d 13 (1964); United States v. Beatty, 350 F.2d 287 (6th Cir. 1965), cert. denied, 382 U.S. 1028, 86 S.Ct. 651, 15 L.Ed.2d 541 (1966); and United States v. Gray, 405 F.2d 1204 (6th Cir. 1969), and that the miscellany of activities described by Boroski did not require the Board to make a factual finding of exempt ministerial status.

2) The Board's refusal to reopen Boroski's classification.

Appellant asserts that "the Selective Service Board failed to reopen the classification upon proper request and therefore failed to grant to the appellant all procedural rights required under the selective service regulations."

Our own review of the record persuades us that, as a matter of fact and law, Boroski was not denied any request

for reopening of his classification. We set out the history of the consideration given to Boroski's requests for exemption as recited in ₁the government's brief to this Court.

"On February 23, 1965 appellant was classified 1-O by the Appeal Board. On March 4, 1965 he submitted a letter to his draft board which appellant construes as a request to reopen his classification. He was then advised by the Board Clerk to submit any new information he possessed regarding his status, and that any information submitted would be reviewed by the board. On April 7, 1965 the registrant submitted an extensive letter purportedly offering additional factual data in support of his claimed ministerial exemption. The additional information was in fact no more than a reiteration of arguments previously made by the registrant and presumably considered by the board. The only relevant new fact presented was that appellant had been one of numerous speakers at a Circuit Assembly of his sect.

"On September 28, 1965 the clerk of the draft board again inquired of the registrant whether there had been any change in his work status. In reply, the registrant on October 1, 1965 submitted a further letter indicating that in February, 1966, some five months later, he would be leaving his secular employment to engage in further religious activities. A subsequent conference with the board and a representative from State Headquarters at which time the registrant's file was again reviewed according to the minutes of the meeting, disclosed that the registrant offered no new evidence at that time to support his claim for ministerial exemption. Finally on December 14, 1965, the clerk of registrant's local board, apparently in response to the registrant's statements at the November 23, 1965 meeting, advised appellant by letter that the board had again reviewed the contents of his file with particular reference to material submitted since March, 1965."

32 C.F.R. §§ 1625.2 and 1625.4 *permit* the board to reopen a registrant's classification after he has pursued one appeal, but they do not *require* the board to do so. *See,* United States v. Jennison, 402 F.2d 51 (6th Cir. 1968) cert. denied, 394 U.S. 912, 89 S.Ct. 1024, 22 L.Ed.2d 225 (1969); United States v. Jackson, 408 F.2d 1000 (6th Cir. 1969).

This claimed refusal to reopen was not raised in the District Court. In Crutchfield v. United States, 142 F.2d 170 (1943), the Ninth Circuit said:

"[T]his court is an appellate court with the function of considering and rectifying errors of the trial court. Defects in pleadings or evidence which were not presented to the trial court, and on which it has consequently not ruled, present no error to be assigned as such on appeal. [citing cases]." 142 F.2d at 175.

3) Failure of proof that Boroski would have been called for induction at time of order for civilian work.

■ No specific proof was offered at Boroski's trial that, had he not been classified 1-O, he would have been ordered to report for induction at the same time he was ordered to report for civilian work. Boroski did not introduce any evidence as to the order of call at trial and did not object to the failure of the government to offer any proof. The applicable regulation provides:

"[S]uch order [to report for civilian work] shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class 1-O * * *." 32 C.F.R. § 1660.20(d). Several Circuits have held that a conviction will not be reversed on appeal for failure of proof as to the order of call, where defendant did not raise the issue at trial. Yates v. United States, 404 F. 2d 462 (1st Cir. 1968), reh. denied, 407 F.2d 50 (1969), cert. denied, 395 U.S. 925, 89 S.Ct. 1781, 23 L.Ed.2d 242 (1969); United States v. Sandbank, 403 F.2d 38,

40 (2nd Cir. 1968), cert. denied, 394 U.S. 961, 89 S.Ct. 1301, 22 L.Ed.2d 562 (1969); Greer v. United States, 378 F.2d 931, 933 (5th Cir. 1967); Lowe v. United States, 389 F.2d 51 (5th Cir. 1968); Pigue v. United States, 389 F.2d 765 (5th Cir. 1968). We agree.

4) Hearsay proof of Boroski's refusal to work.

■ An employee of Harper Hospital testified that on the day ordered, January 31, 1966, Boroski appeared at the hospital but refused to work. Boroski complains as follows:

> "The only proof here is the hearsay evidence of one hospital employee that she heard the registrant tell another hospital employee he would not perform the work. This is not adequate proof of the corpus delicti that would support a conviction of a felony."

He also claims that minutes of board meetings and other recitals in his file were hearsay.

No objection to any of the foregoing was made at trial. We find the point without merit.

5) Involuntary servitude.

■ We hold that Boroski's claim that ordered civilian work amounts to "involuntary servitude" violative of the Thirteenth Amendment has no merit. Badger v. United States, 322 F.2d 902 (9th Cir. 1963), cert. denied, 376 U.S. 914, 84 S.Ct. 669, 11 L.Ed.2d 610 (1964); United States v. Holmes, 387 F.2d 781 (7th Cir. 1967), cert. denied, 391 U.S. 936, 88 S.Ct. 1835, 20 L.Ed.2d 856 (1968).

6) Absence of civilian work order.

■ While the point was not raised in the District Court nor relied upon in appellant's brief, on oral argument appellant's counsel asserted that there was no proof that appellant was validly ordered to report for civilian work, as required by 32 C.F.R. § 1660.20(d), which provides in relevant part:

> "If * * * the local board and registrant are still [after a meeting] unable to agree upon a type of civilian work which should be performed by the registrant in lieu of induction, the local board, with the approval of the Director of Selective Service, shall order the registrant to report for civilian work."

Although cases have interpreted this regulation strictly,[2] we consider that the Local Board complied with it. The minutes of the Board reflect that on November 23, 1965, the Board, at a meeting, by a 4–0 vote specifically made a "decision that he [Boroski] perform 2 yrs. civilian work, in lieu of induction at Harper Hospital, Detroit, Michigan." After receiving approval of the Director through State Headquarters between December 3, 1965 and January 17, 1966, the Board on January 19, 1966 mailed to appellant Form SSS-153—"Order to Report for Civilian Work." We consider that the Board made a valid order on November 23, 1965, conditioned upon the Director's approval, and it was not necessary for the Board to hold a second meeting with respect to the matter subsequent to obtaining approval. See, United States v. Crowley, 405 F.2d 400, 404–405 (4th Cir. 1968), cert. denied, 394 U.S. 904, 89 S.Ct. 1011, 22 L.Ed.2d 215 (1969); Davis v. United States, 402 F.2d 513, 514 (5th Cir. 1968), cert. denied, 394 U.S. 908, 89 S.Ct. 1019, 22 L.Ed.2d 219 (1969); United States v. Mendoza, 295 F.Supp. 673, 678 (E.D.N.Y.1969).

Judgment affirmed.

---

2. See, Brede v. United States, 396 F.2d 155 (9th Cir. 1968), modified on rehearing, 400 F.2d 599 (1968); Cupit v. United States, 292 F.Supp. 146 (W.D.Wis.1968).